PHILLIP S. BROWN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 22636-80.
United States Tax Court
T.C. Memo 1982-189; 1982 Tax Ct. Memo LEXIS 552; 43 T.C.M. (CCH) 1047; T.C.M. (RIA) 82189; April 13, 1982. Byron D. Bryant, for the petitioner. John L. Hopkins, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1978 in the amount of $ 1,276.32. The issue for decision is whether petitioner is entitled to deduct $ 4,600 spent in traveling from his home to the construction site where he worked as an ordinary and necessary business expense. [1]
*553 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner and his then wife, Pamela S. Brown, filed a joint Federal income tax return for the calendar year 1978 and an amended return for that year with the Director, Internal Revenue Service Center, Memphis, Tennessee. At the time of the filing of his petition in this case, petitioner resided in Knoxville, Tennessee. On February 23, 1978, petitioner became employed by the Tennessee Valley Authority (TVA) as a sheet metal worker at the Watts Bar Nuclear Plant. On that day he signed a document, TVA Form 9880A, entitled "Appointment Affidavit and Conditions." Among the statements contained in this document was the following: "Trades and labor temporary construction hourly, not to extend past: 79 02 07." This same document showed that petitioner was affiliated with the Sheetmetal Workers Local 51, Knoxville, Tennessee, and that the local union having jurisdiction over the job was Sheetmetal Workers Local 51, Chattanooga, Tennessee. The TVA had an agreement with Sheetmetal Workers Local 51, Chattanooga, Tennessee, with respect to supplying sheet metal workers at its project at the Watts Bar *554 Nuclear Plant. The Chattanooga Local 51 was unable to supply all the individuals needed for work on the Watts Bar Nuclear Plant and had an agreement with Local 51 in Knoxville to also supply sheet metal workers for that project. Petitioner, as a member of Local 51 Knoxville, received his assignment to work for TVA at the Watts Bar Nuclear Plant through the union agent of that Local as he received all of his other assignments. Work on the Watts Bar Nuclear Plant was begun in 1975 and it was expected that it would require 8 years or more to complete the plant. The Watts Bar Nuclear Plant was approximately 80 miles from Knoxville, Tennessee, and was 81 miles from Seymour, Tennessee, where petitioner resided with his wife and children during the year 1978. During the late 1970's and until sometime in 1980, the Watts Bar Nuclear Plant was at a construction stage that required a great number of sheet metal workers, steam fitters, and electricians and qualified individuals in those trades in the area of the Watts Bar Nuclear Plant were in short supply. Even though sheet metal workers were in short supply in the area of the Watts Bar Nuclear Plant and other nuclear plants which were *555 under construction at that time by the TVA, it was the policy of the TVA to employ all hourly construction workers on a temporary basis. For some time prior to 1978 and up to approximately October 1978 when the provision was deleted from the "Appointment Affidavit and Conditions" signed by hourly workers, TVA placed a date of 11 months and some odd days not to exceed 29 from the date of employment as the termination date of all hourly construction workers. These hourly construction workers were hired as temporary workers so that they could be dropped immediately from the TVA roles if necessary. TVA is an agency of the United States Government and at times was required by the Office of Management and Budget or a presidential directive to comply with certain employment ceilings. During the time the provision for termination of a temporary employee at the end of 11 months and 29 days was contained in the "Appointment Affidavit and Conditions," officials of TVA were of the view that this provision further aided in quick termination of hourly construction employees if such quick termination were necessary. While this provision was in the appointment conditions, the temporary worker *556 would be terminated at the stated termination date for a period of approximately 10 workdays and after that brief termination period generally would be reemployed. In certain trades the chances of reemployment were well over 90 percent and for sheet metal workers the chances of being reemployed were approximately 80 percent. When the 10-day furlough began, the employee often would be told that he would very likely be needed and be reemployed after the 10-day break. Since the provision for termination within 11 months and 29 days was deleted from the appointments of temporary hourly construction workers by the TVA prior to February 7, 1979, which was the stated termination date of petitioner's employment, petitioner was not terminated at that time and worked at the construction site of the Watts Bar Nuclear Plant continuously from February 23, 1978, until his termination on June 26, 1980, except for certain times when he was hospitalized because of an injury. His termination in 1980 was due to a reduction in force. When petitioner went to work at the Watts Bar Nuclear Plant in February 1978, he did not know how long he would be employed at that plant. He had been working in *557 the Knoxville area where he maintained his home and, because of the lack of work in the Knoxville area, the union agent obtained the work for him at the Watts Bar Nuclear Plant. The only certainty petitioner had about when he would be terminated was that he knew he would be terminated when the work at the Watts Bar Nuclear Plant was completed. Petitioner drove from his home in Seymour, Tennessee, to the Watts Bar Nuclear Plant site each morning and worked there for approximately 10 hours and then drove home in the evening. On his Federal income tax return for the year 1978, petitioner deducted $ 4,600 as "Employee business expenses" with the explanation "Out of Town Temp Employment." Respondent in his notice of deficiency disallowed this claimed deduction with the following explanation: It is determined that since the termination of your employment at this job site could not be foreseen within a fixed and reasonably short period, the employment was indefinite rather than temporary, and any travel expenses incurred in connection therewith are nondeductible personal expenses rather than ordinary and necessary business expenses. * * * OPINION Section 162(a)(2) [2] provides *558 for a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business including traveling expenses while away from home in pursuit of a trade or business. Generally speaking, a taxpayer's home, for the purpose of determining whether he is away from home in pursuit of a trade or business within the meaning of section 162(a), is considered to be his principal place of employment. . However, when a taxpayer's employment at some location is temporary as distinguished from indefinite or indeterminate, he is considered while so employed to be away from home in pursuit of his trade or business. ; ; As we have pointed out on a number of occasions, employment is considered to be temporary where it can be expected to last for only a short *559 period of time. ; .It is clear that petitioner in this case viewed all of his work as temporary since from the very nature of the construction business his employment at any particular site would cease when the construction work at that site was completed. However, this is not the definition of "temporary" that this Court has used in determining whether an individual is entitled to deduct traveling expenses while away from home under section 162(a)(2). . Petitioner testified that he did not know how long he would work at the Watts Bar Nuclear Plant when he commenced his employment there is February 1978. He testified that although he was told he would be terminated after 11 months and 29 days, he was aware that after approximately a two-week furlough many workers returned to the site and continued to work there. Petitioner did testify that the union agent told him that his work at the Watts Bar plant would last 3 or 4 months but it is far from clear the context in which petitioner was given this *560 information. It is reasonable to conclude from the record as a whole that the union agent meant that he hoped by that time to find work for petitioner in the Knoxville area. The record shows that TVA had negotiations with the union with respect to furnishing workers and that the need for workers at the Watts Bar Nuclear Plant was reasonably steady and this had been known to the union agent.Also, the fact that construction on the plant would be expected to extend 4 or 5 years after 1978 was generally known.The fact that petitioner's union agent hoped to find work for petitioner in the Knoxville area within 3 or 4 months after petitioner began work at the Watts Bar plant would not cause petitioner's employment at the Watts Bar plant to be temporary rather than indefinite. The criteria is whether the employment, itself, is temporary, not whether petitioner is looking for other employment. Nor does the fact that petitioner was working in the territorial jurisdiction of the Chattanooga Local of the union cause his work to be temporary. We have held that where skilled workers in a taxpayer's craft were in short supply in a certain area so that workers from another area were sent in *561 to work there on a basis stated to be "temporary," this fact did not cause the taxpayer's work to be temporary rather than indefinite for the purposes of section 162(a). . Nor has the fact of temporary layoffs interrupting otherwise continuous employment of a construction worker at a particular site been considered to necessarily cause the taxpayer's employment to be temporary rather than indefinite. .
Considering the facts in this case against the background of our holdings in other cases, we conclude that petitioner's employment at the Watts Bar Nuclear Plant site in 1978 was not temporary but was indefinite. The record shows that workers in petitioner's craft were in short supply. Although the termination agreement was initially put in petitioner's employment agreement, this provision did not mean that petitioner's work at the Watts Bar Nuclear Plant would in fact be terminated. The record shows that the chances of petitioner not being terminated but merely furloughed for 10 days were 80 percent. In actual fact, the so-called "11 - 29" provision was *562 removed from the employment conditions by TVA before the date noted as petitioner's termination date was reached and petitioner was never in fact actually terminated. Petitioner in his brief points out that the Ninth Circuit Court of Appeals in , revg. , and an Idaho District Court in (D.Idaho, S.D. 1962), did not accept the definition of "temporary" that this Court adopted in such cases as , and Petitioner states that rather than adopting the test set forth in other cases that temporary employment is employment that can be expected at the time of its acceptance to last only for a short period, in the Harvey and Mathews cases the criteria used in determining whether the taxpayer's employment was temporary was if "there is a reasonable probability known to him that he may be employed for a long period of time at his new station." . Petitioner then *563 argues that at the time he accepted employment at the Watts Bar Nuclear Plant, he did not know how long his employment there would last and therefore could not know that there was a reasonable probability of the employment lasting for a long period of time. While the instant case is distinguishable from Harvey in that here, as in McCallister, even though the record does not show the period of expected employment of sheet metal workers at the Watts Bar Nuclear Plant, it does reveal that construction on that plant would require a number of years after petitioner's employment commenced and that the construction project was not near a large metropolitan center causing the expectation of a continuing need for workers from outside the local area. . For the same reason, this case is distinguishable from , in which the District Court held the facts to be indistinguishable from those in The Circuit Court of Appeals for the Sixth Circuit, the circuit to which an appeal in this case would lie, has held that where a taxpayer's *564 work at a particular location is indefinite, the maintenance of his home at another location is not required by the exigencies of his business but is motivated by personal reasons. . In effect, the Sixth Circuit has adopted the same criteria used by this Court in the McCallister case, the Norwood case, and numerous other cases. [3] While we have considered employment temporary where it can be expected to last for only a short period of time, we have recognized, as the Supreme Court pointed out in , that whether a job is temporary is a question of fact and that "each case must be decided upon the basis of its own facts and circumstances." *565 The real basis of petitioner's position in this case is that a construction worker's job is always temporary since he will be terminated when the project on which he is working is completed. Because of this fact it might be said that a construction worker never has permanent employment. However, this lack of absolute permanence is not the criteria which this Court and other courts have used in determining whether a taxpayer's work is temporary as distinguished from indefinite or indeterminate. See , affd. ; , affd. . On the basis of this record, we conclude that petitioner is not entitled to deduct the expenses of driving his automobile from his home in Seymour to his work at the Watts Bar Nuclear Plant during the year 1978 since he was not away from home in the pursuit of a trade or business within the meaning of section 162(a)(2). Decision will be entered for the respondent.
Footnotes
1. Respondent's counsel at the trial and on brief stated that the only issue before the Court was whether petitioner's employment during the year 1978 was temporary or indefinite. Respondent's counsel specifically agreed that if the Court concluded that petitioner's employment in 1978 was temporary, petitioner should be entitled to the deduction he claimed even though this Court has held that expenses of driving to and from work are nondeductible commuting expenses whether or not the taxpayer's employment was temporary. See the discussion in .↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
3. Petitioner also cites and relies on , in which we held that a pipefitter and welder was temporarily employed by the Baltimore Gas and Electric Company at its Calvert Cliffs nuclear power plant project at Lusby, Maryland, even though he worked at that plant from mid December 1971 until he voluntarily quit on October 24, 1974, upon finding work as a pipewelder on a construction project near his family home in North Carolina. The facts in the Patrick case are substantially different from those in the instant case. In that case the taxpayer also operated a business where he maintained his family home. In the Patrick case we recognized that the question of whether employment is temporary or indefinite requires a factual determination. In this regard, it should be pointed out that , which was not cited in the Patrick case, involved a steamfitter working at the Calvert Cliffs plant at Lusby, Maryland, initially from October 1971 until March 1972 installing pipes in an auxiliary building and from March 1972 until March 1973 as a foreman, from March 1973 until September 1973 as an instrument fitter, from September 1973 until January 1974 as a welder, and from January 1974 until December 1974 as a union shop steward. In that case we held that beginning in March 1972 the taxpayer should have realized and reasonably expected to be rehired for future jobs at the same project--"a project which he knew was a large one and would take a substantial amount of time to complete." . We concluded that the taxpayer's employment after March 1972 was indefinite rather than temporary. The facts in the instant case are more comparable to the facts in the Norwood case than they are to the facts in the Patrick↩ case.